IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 1:11 CR 254 |
| | ) | |
| DONALD JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## STATEMENT OF FACTS

The United States and the defendant, DONALD JOHNSON, agree that had this matter proceeded to trial the United States would have proven the facts set forth in this Statement of Facts beyond a reasonable doubt. Unless otherwise stated, the time periods for the facts set forth herein are at all times relevant to the charges in the Information.

I.  Overview

1. From 2003 to 2006, JOHNSON was a relationship manager in the corporate client group of the NASDAQ Stock Market ("NASDAQ"). From 2006 to his retirement in September 2009, he was a managing director on NASDAQ's market intelligence desk.

2. From at least August 2006 through in or about July 2009, the defendant engaged in a scheme to defraud NASDAQ by trading on material non-public information.

II. The Fraudulent Scheme

3. In the course of his employment, the defendant regularly received material, non-public information from the following companies (the "NASDAQ-Listed Companies") concerning their securities:

a. Central Garden and Pet Co. ("Central Garden"), a public company whose stock traded on the NASDAQ under the symbol "CENT," sold home and pet supplies to consumers.

b. Digene Corporation ("Digene"), a public company whose stock traded on the NASDAQ under the symbol "DIGE," pursued biotechnology research and development, including developing certain genetic diagnostic tests.

c. Idexx Laboratories Inc. ("Idexx"), a public company whose stock traded on the NASDAQ under the symbol "IDXX," sold information technology solutions for animal health and water and milk quality.

d. Pharmaceutical Product Development Inc. ("PPD"), a public company whose stock traded on the NASDAQ under the symbol "PPDI," provided pharmaceutical research and development services.

e. United Therapeutics Corporation ("United Therapeutics"), a public company whose stock traded on the NASDAQ under the symbol "UTHR," developed and marketed pharmaceutical products.

4. The information the defendant received from the NASDAQ-Listed Companies included specific information about upcoming earnings releases, news releases, and major personnel changes. From at least August 2006 through in or about July 2009 (the "Relevant Period"), the defendant used this material, non-public information to make purchases and sales of securities on at least eight different occasions, generating gains totaling $641,157.65. The defendant used or caused to be used instrumentalities of interstate commerce to effect these transactions.

5. In certain instances, JOHNSON realized his gains through short sales of company stock. In a short sale, an investor bets that the price of a stock will go down by borrowing shares of the stock and immediately selling them. If the price of the stock falls, the investor will earn gains by purchasing new shares for less than the investor received in the sale, and returning the new shares to the lender. Realizing gains in this way is known as "covering the short."

6. On or about August 23, 2006, the President, COO, and CFO of Digene announced his resignation. JOHNSON used material, non-public information to make short sales of Digene's stock shortly before the announcement. Soon after the announcement, JOHNSON covered his short positions, generating approximately $34,047.10 in gains from these illicit transactions.

7. On or about December 7, 2006, Central Garden announced a mixed earnings report. The company's earnings were in line with expectations but its guidance for the future was well below the market's consensus. JOHNSON used material, non-public information to make short sales of Central Garden's stock shortly before the announcement. Soon after the announcement, JOHNSON covered his short positions, generating approximately $57,741.83 in gains from these illicit transactions.

8. On July 17, 2007, PPD announced a mixed earnings report. The company's earnings were in line with estimates but its revenues were weaker than expected and the company lowered its earnings guidance. JOHNSON used material, non-public information to make short sales of PPD's stock shortly before the announcement. Soon after the announcement, JOHNSON covered his short positions, generating approximately $100,458.02 in gains from these illicit transactions.

9. On November 1, 2007, United Therapeutics announced successful trial results for its drug Viveta (now called Tyvaso). JOHNSON used material, non-public information to purchase shares of United Therapeutics shortly before the announcement. Soon after the announcement, JOHNSON sold the shares, generating approximately $175,230.82 in gains from these illicit transactions.

10. On October 24, 2008, Idexx announced a mixed earnings report. Earnings were positive, but the company announced guidance for the following year that was well below expectations. JOHNSON used material, non-public information to make short sales of Idexx's stock shortly before the announcement. Soon after the announcement, JOHNSON covered his short positions, generating approximately $99,020.08 in gains from these illicit transactions.

11. On December 12, 2008, NASDAQ announced that the stock of PPD would be included in the NASDAQ-100, an index of certain companies listed on NASDAQ. An announcement such as this will frequently increase a stock's price, because mutual funds indexed to the NASDAQ-100 and other investors will seek to acquire the newly listed company's shares. JOHNSON used material, non-public information to purchase shares of PPD shortly before the announcement. Soon after the announcement, JOHNSON sold the shares, generating approximately $5,291.36 in gains from these illicit transactions.

12. On April 21, 2009, PPD announced a disappointing earnings report. It missed its estimated earnings and lowered its guidance for the year. JOHNSON used material, non-public information to make short sales of PPD's stock shortly before the announcement. Soon after the announcement, JOHNSON covered his short positions, generating approximately $58,500.64 in gains from these illicit transactions.

13. On July 30, 2009, United Therapeutics announced approval of its drug Tyvaso. JOHNSON used material, non-public information to purchase shares of United Therapeutics shortly before the announcement. Soon after the announcement, JOHNSON sold the shares, generating approximately $110,867.80 in gains from these illicit transactions.

14. The defendant knew that he was violating NASDAQ policies as well as federal law in executing the transactions that were part of the fraudulent scheme. To hide his actions, the defendant executed these trades in an account in the name of the defendant's wife that he had not disclosed to NASDAQ. Failing to disclose this account was itself a violation of NASDAQ policies, as well as a device, scheme or artifice to defraud.

III. Conclusion

15. The defendant admits that this statement of facts does not represent and is not intended to represent an exhaustive factual recitation of all the facts about which he has knowledge relating to the scheme to defraud as described herein.

16. The defendant admits that his actions, as recounted herein, were in all respects intentional and deliberate, reflecting an intention to do something the law forbids, and were not in any way the product of any accident or mistake of law or fact.

Respectfully submitted,

Denis J. McInerney
United States Department of Justice
Chief
Criminal Division, Fraud Section

By: *[signature]*
Justin Goodyear
Trial Attorney

Neil H. MacBride
United States Attorney
Eastern District of Virginia

By: *[signature]*
Raymond E. Patricco Jr.
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, DONALD JOHNSON, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate to the best of my knowledge, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

*[signature]*
Donald Johnson
Defendant

I am DONALD JOHNSON's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Jonathan A. Simms, Esq.
Attorney for Defendant