IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Case No. 1:11cr254 |
| DONALD JOHNSON, | ) ) ) | |
| Defendant. | ) ) | Hon. Anthony J. Trenga |

**DEFENDANT'S POSITION ON SENTENCING FACTORS**

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines ("Guidelines"), and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the Defendant, Donald Johnson, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case.

On May 26, 2011, Mr. Johnson entered a guilty plea to one count of Securities Fraud. According to the PSR, Mr. Johnson's gains as a result of the offense totaled $755, 157.65. Moreover, the same report adds an additional two (2) points to Mr. Johnson's offense level under 3B1.3 of the Guidelines, and deducts three (3) points for acceptance of responsibility. The PSR calculation results in an offense level of twenty-one (21) and an advisory guideline range of 37 – 46 months.

Mr. Johnson objects to the calculation submitted by the PSR, because it adds the additional two (2) points under 3B1.3 of the Guidelines. Mr. Johnson submits that an offense level of nineteen (19) and an advisory guideline range of 30 – 37 months is accurate.

1

For the reasons set forth below, Mr. Johnson submits that eighteen (18) months followed by (12) months of in-home confinement is sufficient to meet the aims of sentencing.

**ENHANCEMENT UNDER 3B1.3**

The courts in the Fourth Circuit and across the nation have consistently emphasized that "the question of whether an individual occupies a position of trust should be addressed from the perspective of the victim". *United States v. Moore,* 29 F.3d 175, 180 (4th Cir.1994) citing *United States v. Queen*, 4 F.3d 925, 927 (10th Cir.1993). The Defendant must share some fiduciary duty or relationship to the victims of his conduct. There must be "a trust relationship between [the defendant] and his victim" for the enhancement to apply. *See United States v. Hickman, 991 F.2d 1110, 1112 (3d Cir.1993).*

In *Moore*, the court noted the fact that the defendants may have occupied positions of trust at their workplaces does not govern the Sec. 3B1.3 analysis because their employers were not the victims in the case. *United States v. Moore,* 29 F.3d 175, 180 (4th Cir.1994). The court went on to maintain that the victim and defendants had nothing more than a standard buyer-seller relationship, and because ordinary commercial relationships do not constitute a trust relationship sufficient to invoke the Sec. 3B1.3 enhancement. *Id*. Thus, it is clearly not appropriate to arbitrarily label the employer as a victim simply because their reputation was harmed by a defendant's illegal conduct.

In terms of Mr. Johnson's conduct, the Government had not initially identified any victims. NASDAQ was not listed as a victim until the Government filed their Position on Sentencing. Their argument on this issue is weak and contains broad generalities as to why this Court should consider NASDAQ as a legitimate victim. The problem with the Government's position on this issue is evident by the fact that they have no way of placing any value on what

NASDAQ actually lost. The Government has not requested restitution under Mr. Johnson's plea agreement, but has mandated a forfeiture of gains. It is not enough to say that NASDAQ is a victim because their clients may have lost confidence in them. This does not make them a victim. Moreover, the PSR states under the section entitled victim impact that, "There are no identifiable victims".

The issue of identifying victims of insider trading has been given much attention in academia circles. Most scholars and commentators take the view that there are no victims. Peter-Jan Engelen, PhD, Professor of Economics as Utrecht University, and Luc Van Liedekerke, PhD, Associate Professor at the Institute of Philosophy at Katholieke Universiteit Leuven, in their Sep. 2007 Journal of Business Ethics article, "The Ethics of Insider Trading Revisited," wrote: The confidence of investors is not expected to decline, empirical studies showed no decrease of market liquidity and the non-informed counterpart of the insider was not harmed...". Available at *http://insidertrading.procon.org/view.answers.php?questionID=001111*. Henry G. Manne, SJD, Dean Emeritus at George Mason University, in a Fall 2005 Journal of Corporation Law article "Insider Trading: Hayek, Virtual Markets, and the Dog that Did Not Bark," wrote:"...By and large the idea that there is no direct harm from the practice [of insider trading] has held up very well, especially the point that no real damage is caused to an investor who engages anonymously on an exchange in a trade with an insider on the other side of the transaction…". *Id.*

However some scholars are of the opinion that the sole victims of insider trading are the party who traded with the individual possessing material non-public information. Stephen Sibold, LLM, former Chair & CEO of the Canadian Securities Administrators (CSA), was quoted in a Nov. 12, 2003 CSA news release titled "Regulators Release Illegal Insider Trading

3

Report," as having said: "...Illegal insider trading is not a victimless crime... Investors who unknowingly trade with people who have inside information lose because they are in an unequal and unfair relationship. *Id*.

If the Court is inclined to accept the view that the anonymous trader on the other end of Mr. Johnson's trades where the victims, it is still clear that his relationship with those individuals did not constitute a trust relationship sufficient to invoke Sec. 3B1.3. Moreover, he did not owe them any fiduciary duty.

**APPLICATION OF U.S.C. §3553(a) Factors**

In *Kimbrough v. United States*, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, *See Rita v. United States*, 127 S. Ct. 2456 (2007). Furthermore, the sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of §3553(a).

4

**A. The Nature and Circumstances of the Offense**

Mr. Johnson has accepted his responsibility for his actions that violated federal law. Mr. Johnson, while employed as a NASDAQ employee, came across information (via emails, telephone conversations, meetings, etc.) that was not privy to the general public. Mr. Johnson would then conduct trading activity based upon that information on a TD Ameritrade account. During the time span of 2006 through 2009, Mr. Johnson traded on non-public information on eight different occasions. While the matter before the Court focuses on Mr. Johnson's trading based on material, non-public information, it is also important to note that Mr. Johnson made hundreds of legal trades on the stock market during this same time span. It is also important to note that the majority of his gains were nullified by his losses on the stock market. His thirst for trading caused him to loss often and loss big.

**B. The History and Characteristics of the Defendant, the Need to Provide the Defendant with Needed Educational Training, and the Need to Provide Restitution.**

Mr. Johnson can be described as an intelligent individual with a kind and pleasant demeanor. Mr. Johnson is devoted to his family, and is also known for his charitable contributions to those in need.

Mr. Johnson is currently fifty-seven (57) years old. He was born and raised in Greenville County, North Carolina and lived there with his parents and siblings until he was accepted into college. Mr. Johnson grew up in a supportive home, and maintains a positive relationship with his parents and siblings. His mother, who is seventy-nine (79), was recently diagnosed with cancer, and Mr. Johnson has taken several trips to North Carolina to check on her health.

Mr. Johnson graduated from the University of North Carolina, Greensboro with a Bachelor of Arts degree in biology. He continued his education at the University of Virginia, and earned a Bachelor of Science degree in nursing.

Mr. Johnson spent the early portion of his career employed as a nurse with the United States Army. Johnson could have made more money in the private sector, but choose to devote six (6) years of his life working as a soldier and nurse with the U.S. Army. He received an honorable discharge in 1986.

In 1989, Mr. Johnson began working as an employee with NASDAQ. He quickly established himself amongst his colleagues and gained their respect. This is illustrated by the positive evaluations that he received during his tenure at NASDAQ.

Unfortunately, Mr. Johnson also took part in illegal activity while employed at NASDAQ. He looks back on his actions with much regret and shame.

Mr. Johnson has always devoted his time and resources to various charity organizations. One of his proudest accomplishments is the charitable work that he performed on behalf of Eternal Hope in Haiti. Eternal Hope in Haiti is a non-profit Georgia-based corporation created in 1993. The purpose is to provide basic health care and nutritional services to members of the poverty and disease-ridden communities of northern Haiti.

On December 10, 2010, Mr. Johnson and his daughter traveled to Haiti to provide assistance to those in need. While in Haiti, Mr. Johnson traveled to a clinic and assisted in treating over one hundred and fifty (150) Haitians who were suffering from severe Cholera. Mr. Johnson and his daughter spent a significant amount of time in Haiti and did everything that they could to assist.

Mr. Johnson also donates his time and resources to support education in Virginia. He has worked with his Alma Mata the University of Virginia to set up a scholarship fund for minority students attending the school of nursing. In addition, Mr. Johnson has served on several different advisory boards with the University of Virginia, and he has been recognized for his commitment to education.

Mr. Johnson is married to Dalila Lopez. The couple wed in 1988, and has raised three children together. Their marriage continues to be Mr. Johnson's lighthouse as he attempts to navigate the storm of his impending sentencing. The family is filled with love, and each one of them is dedicated to supporting each other through even the hardest of times. Mr. Johnson has always been there for his family, and currently serves as the primary child care provider for his grandchildren.

It is clear that despite his actions in the instant case, Mr. Johnson has always maintained a charitable, devoted, and loving relationship with the community and family. He has done much good in his lifetime, and his current wrongs should be viewed in the context of his entire life deeds.

C. **The Kinds of Sentences Available**

This Court has the option of sentencing Mr. Johnson to serve a sentence of incarceration followed up by a term of "in home confinement".

D. **The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and rehabilitation.**

Mr. Johnson is a fifty-seven (57) year old who has worked his entire life to provide for his family. He legitimately excelled in two vastly different career fields, and now he has to come to terms that it has all been nullified by his current circumstances. He has come to the realization

that he will be absent from his family.  He has come to the realization that he will be incarcerated while his elderly mother is struggling with her recent cancer diagnosis and subsequent treatment.  Finally, he has come to the realization, that despite his various charitable contributions, he will have to deal with the shame and scorn that society casts upon felons.  Mr. Johnson's life today is a stark contrast to the life that he had one year ago today, and he knows that it will never be the same.  Mr. Johnson has learned a hard lesson, and this Court will never hear about him crossing the line into illegal conduct again.

In addition to this matter, initiated by the Department of Justice, Mr. Johnson also has a pending case with the Securities and Exchange Commission.  Although the matter is still pending, it is a forgone conclusion that the penalties and disgorgement amounts that will be levied against Mr. Johnson will be crushing.  Mr. Johnson, unlike many others before him, is facing the heavy handed punishment of both agencies simultaneously.  In the past and present, Defendants are normally pursued by one agency or the other.  However, Mr. Johnson has been singled out for punishment by both agencies.

Mr. Johnson has come to terms with the fact that his actions will continue to have a devastating effect on his life.  Mr. Johnson's guilty plea received a great deal of media attention, and he was immediately forced into dealing with feelings of shame, embarrassment, and extreme regret.

Mr. Johnson is experiencing his first contact with the criminal justice system.  He has no prior convictions or arrests.  The fact that an individual with his background for achievement and charitable work is now facing incarceration is shocking.  A sentence of eighteen (18) months, followed by twelve (12) months of in-home confinement is sufficient to accomplish the aims of sentencing.  Mr. Johnson's fall from grace which will conclude with his incarceration will be a

clear message to other individuals who are thinking about committing similar offenses. The fact that he is also going to be completely ruined financially is clearly enough deterrence for other individuals who are thinking about committing similar offenses. In addition, the fact that Mr. Johnson has had to navigate through two simultaneous prosecutions for the same conduct is clearly enough to deter others. Finally, the public shame, embarrassment, and scorn that Mr. Johnson has had to face should also deter others. When coupled with the punishment that Mr. Johnson has faced already, eighteen (18) months of incarceration, followed by twelve (12) months of home confinement is more than enough to meet the aims of sentencing.

### E. The Need to Avoid Unwarranted Sentencing Disparities

A sentence of eighteen (18) months, followed by twelve (12) months of in-home confinement would not result in an unwarranted sentencing disparity. Courts consistently give similarly situated defendants sentences below the terms prescribed by the U.S. Sentencing Guidelines.

A Reuters Legal analysis of sentences imposed in 2009 and 2010 showed that eighty-seven (87) percent of the sentences for insider trading were lower than what the U.S. Sentencing Guidelines called for. Available at *www.reuters.com/article/2011/01/06/us-insider-trading-idUSTRE7055JP20110106?feedType=RSS*. Courts are clearly sending a message that they view the advisory guideline ranges as overly harsh for this particular offense, and have used their discretion to impose sentences that are appropriate and just.

### CONCLUSION

For the reasons stated above, Mr. Johnson respectfully requests that this Court impose no more than eighteen (18) months of incarceration, followed by (12) months of in-home confinement. It is Mr. Johnson's position that this sentence is sufficient to accomplish the

9

objectives of sentencing as detailed in 18 U.S.C. §3553(a). Mr. Johnson also requests that the Court impose no fine or costs of confinement or supervision given his limited financial resources and inability to pay.

                                                  Respectfully submitted,

                                                  DONALD JOHNSON
                                                  By Counsel

By:_____/s/_____
 Jonathan A. Simms
Attorney for Donald Johnson
Simms & Harris, PLLC
11325 Random Hills Road
Fairfax, Virginia 22030
(703) 225 - 3366
(703) 225-3333 (Fax)
Jsimms_esq@yahoo.com

CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2011 I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Charles Connolly, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing will be delivered to Chambers within one business day of the electronic filing. A courtesy copy also will be delivered to the assigned U.S. Probation Officer, Third Floor, 401 Courthouse Square, Alexandria, Virginia, 22314.

                                          By:_____/s/_____
                                            Jonathan A. Simms
                                            Attorney for Donald Johnson
                                            Simms & Harris, PLLC
                                            11325 Random Hills Road

Fairfax, Virginia 22030  
(703) 225 - 3366  
(703) 225-3333 (Fax)  
Jsimms_esq@yahoo.com