# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 1:11cr254 |
| | ) |
| DONALD JOHNSON, | ) |
| | ) |
| Defendant. | ) Hon. Anthony J. Trenga |
| | ) |

## LETTER SUBMITTED BY DEFENDANT

COMES NOW, the Defendant, DONALD JOHNSON, by and through counsel, and hereby requests that this Court review the attached letter.

Respectfully submitted,

DONALD JOHNSON
By Counsel

By:_____/s/_____
Jonathan A. Simms
Attorney for Donald Johnson
Simms & Harris, PLLC
11325 Random Hills Road
Fairfax, Virginia 22030
(703) 225 - 3366
(703) 225-6666 (Fax)
Jsimms_esq@yahoo.com

## CERTIFICATE OF SERVICE

      I hereby certify that on August 8, 2011 I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Charles Connolly, Esq.
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700


      Pursuant to the Electronic Case Filing Policies and Procedures, a courtesy copy of the foregoing will be delivered to Chambers within one business day of the electronic filing. A courtesy copy also will be delivered to the assigned U.S. Probation Officer, Third Floor, 401 Courthouse Square, Alexandria, Virginia, 22314.

                                                                /s/
                                                 Jonathan A. Simms
                                              Attorney for Donald Johnson
                                              Simms & Harris, PLLC
                                              11325 Random Hills Road
                                              Fairfax, Virginia 22030
                                              (703) 225 - 3366
                                              (703) 225-6666 (Fax)
                                              Jsimms_esq@yahoo.com

August 5, 2011

The Honorable Judge Anthony J. Trenga
Albert V. Bryan U.S. Courthouse
401 Courthouse Square
Alexandria, VA 22314

Dear Judge Trenga:

I'm writing this letter to personally express my deepest and sincere regrets for violating specific provisions of the federal securities laws and regulations. The shame, embarrassment, and disappointment I've inflicted on my family, friends, and colleagues, have caused me significant guilt and I'll shoulder the remorse for the remainder of my life. My actions have also angered many and I would be the first to acknowledge that such emotions were warranted. I will never forget what my wife said to me last December after the U.S. Postal Inspectors visited my home and presented the preliminary findings of the investigations conducted by the Department of Justice (DOJ) and Securities and Exchange Commission (SEC). In an uncharacteristically seething tone, she stated that "My family and I have always held you in the highest regard and you were the last person I would expect to break the law - you've broken my heart, let me down, and I feel dirty because of what you've done." Of course she was right - I did let her and others down. But it's important to note that my wife has been supportive throughout this ordeal. At the time, I understood that her emotional release and catharsis were necessary before both of us could move forward and address the issues at hand. And I also knew that her comments were a prelude and would pale in comparison to those I would hear in the near-term from family and non-family members.

It took several months, but I eventually realized that I had to begin making amends and recompense. I also had to accept the realization that with regard to certain individuals, I would never regain their trust and respect - and for others, it could take months or years before I would be welcomed back into their lives. But I wouldn't allow either to deter my efforts of atonement, and would continuously explore ways to make reparations and reconciliations for my wrongdoings.

Around the time when I recognized the importance of making amends, I also decided to not ask my family, friends, colleagues, or several distinguished and prominent associates, to write to the court on my behalf. Unsurprisingly, a number of people believed I was making an unwise decision - but I felt then, as I do now, that such requests would be self-serving and provide little, if any, insight regarding whether or not I had accepted responsibility for violating certain laws that govern this country.

According to the Presentence Investigation Report (PIR), when asked why I effected trades based on material, non-public information, the report indicated that my response was "greed". First, I would like to stress that there's no explanation or justification for the unethical behavior I engaged in during the period of August 2006 through July 2009 (the review period), and it would've been uncharacteristic for me to have given a one-word response to such a profound and rhetorical question

without offering additional commentary. In retrospect, an appropriate one-word response (along with additional commentary) would've been "stupidity" rather than greed. As greed implies that a person has accumulated, by most measureable standards, wealth but desired more. But I have never desired or lived a lavish lifestyle - nor is there any evidence that anyone in my family had a rapacious desire for wealth or material items. A thorough analysis of my financial assets and liabilities, as disclosed in the PIR, would reveal that the largest purchase made by either my wife or me during the review period was a 2007 Honda Civic - a car that was financed over three years. My wife and I have/had great jobs and incomes, were debt-free, and could have lived comfortably during our retirement years. Now, everything that we worked so hard for is in jeopardy and I've beaten myself daily over the pain I've caused my family and others. What I did was wrong - so grievously wrong and stupid.

As previously mentioned, my actions negatively impacted and affected hundreds of individuals. And although my family has and will undoubtedly be at my side throughout this ordeal, I haven't told every family member about my legal predicament. Our youngest daughter was told because she noticed the change in my affect and behavior during her periodic visits from college. But with respect to our two oldest children and other family members, including my parents, they are unaware. Rightly or wrongly, the decision was to wait until I had definitive answers, until certain milestones and events (childbirths, weddings, birthdays, anniversaries, Father's Day, etc.) had passed, and until my siblings and I had the opportunity to agree on the best approach and timing to tell my parents; particularly, given their physical health. I've never had to test my network of support or web of relationships as I have over the last seven months.

It would be my guess that my family and friends would also have to progress through the grief cycle - phases which aren't necessarily linear and where a person can move in and out of. I'm sure their initial reaction to the news will be one of shock and disbelief. For example, while my youngest daughter has forgiven me and accepted my outcome, I know she's disappointed and probably, at times, angry, that I'll be unable to attend her graduation or celebrate when she's offered her first teaching job. My oldest son and daughter may foster brief periods of anger because their children (ages range from 7 months to 10 years) won't see their grandfather for an indefinite period of time and as parents, they'll be called upon to explain and answer the question - "Where's grandpa?" But I have no doubt that we as a family will ultimately get through these trying times.

It should be noted that NASDAQ is without question, the fairest, most efficient and transparent stock market in the world; and has some of the most respected, knowledgeable, dedicated, and ethical employees on Wall Street. Its current and former CEOs and other executives, were always supportive and consistently provided me with opportunities to further my career. And it was heartening, after speaking with a number of NASDAQ colleagues following my plea agreement on May 26, to learn that each has forgiven me and offered their unwavering support.

Finally, I can't begin to relate the shame and disappointment I've brought to my former board members and the faculty and staff at the University of Virginia (University). A few years prior to my retirement, I was asked to join the Advisory Board at the School of Nursing (SON) and viewed the appointment not only as an honor but an opportunity to give back to the University and its students. Until my

resignation in May, I was an active and hands-on board member who committed countless hours toward participating on various panels and forums, hosting fund raising events, helping students in areas of financial literacy, writing résumés, providing employment opportunities, or writing letters of recommendation for potential University students. I was (and continue to be) passionate about the University and its SON. My wife and I contributed, on average, about 10 percent of our adjusted gross income to the SON and University and were in the final stages of establishing a scholarship for Hispanic and African American nursing students. The scholarship would have been named in honor of my wife's father, who died in November 2007, but funding for the scholarship has been put on hold as a result of my current criminal and civil cases. However, given the absence of nursing scholarships for minority students at the University, coupled with our strong desire to help others, funding for this scholarship will be one of my top priorities once my legal matters are resolved and I'm prepared to designate the University as one of my beneficiaries to ensure this goal if fulfilled.

Someone once said that "Something has or will happen in your life that will shape who you are and what you will do." That "something" occurred last December, when I and other volunteers from Eternal Hope in Haiti (EHIH), a missionary group based in Atlanta, GA, had the fortune to offer our services to the people of Haiti. Volunteers from EHIH typically go to Haiti for one or two weeks during each calendar quarter. It was my first trip to the Island and what I saw and experienced during my time there had a profound impact on me. We've all read or seen how fragile the country is and before arriving in Haiti, my perception was that most Haitians had lost faith and didn't believe that any presidential leader or financial relief would be capable of delivering them from the despair and misery they've endured for nearly two centuries. But during my time there, I saw specks of hope in a lot of Haitians' eyes - hope that their country would rebound from the multitude of recent and unthinkable disasters.

Those who had a medical background traveled about 40 miles to Le Borgne, a town northwest of Cap Haitien, to treat and care for about 150 patients a day who were suffering from cholera. Given the dismal infrastructure, it took us over two and one-half hours to reach the "clinic". When we arrived, we found patients housed outdoors under a tin roof in sweltering heat, with limited lighting, bedded on soiled, wire-framed cots which served as gurneys for as many as two patients (some cots didn't have a mattress), and surrounded by the symptomatology of cholera. The patients' ages ranged from several months to over 80 years old, and only one patient died during the days we were there. While he appeared to be 12 or 14 years old, one of the Haitian doctors indicated that he was probably 18 - a vivid and disheartening reminder of how prevalent malnutrition is in Haiti and how it retards normal growth and development.

After returning from Cap Haitien, I learned that the SON was actively involved in a nursing school that was recently built in Jacmel, Haiti. One of the professors at the SON asked if I would be interested in volunteering my time and resources at the Haitian school and I immediately said yes. I recall thinking that with the quarterly missionary trips to Cap Haitien, the volunteer work at Jacmel's nursing school, my responsibilities at the SON, University, and its students, and spending time with my family and grandchildren, that I would be busier during retirement than I was working a 60-hour work week at NASDAQ. But everything I've noted above now serves as a painful reminder of lost opportunities and how my actions affected so many undeserving people.

Although no one knows when the U.S. economy will rebound, most economists and analysts agree that it will take several years for the economy to reach pre-recession employment levels. Specifically, the forecast is 5 years if 472,000 jobs are created, on average, each month and 12 years if 321,000 jobs are created. For reference, the Bureau of Labor Statistics indicated that the total payroll employment during the past year was 1.3 million, or an average of 106,000 jobs per month. These sobering numbers, combined with the worst housing market since the Great Depression, paint a gloomy economic situation. The outlook is even more depressing for a 59 or 60 year old person with a felony conviction; however, I realize and accept the probability that it'll be challenging to obtain meaningful employment upon my release from prison. And although it's my understanding that my retirement account cannot be seized by the government, I've advised my attorneys that I'm willing to pay back all ill-gotten gains using the principal and capital gains from my IRA account. It's my hope that the government and others will view this action as a sincere willingness and eagerness to put this issue behind me, and that I've accepted without equivocation responsibility for my wrongdoing.

For decades, I unknowingly practiced the spirit of service but only came to appreciate the importance of "giving back" when I joined the Advisory Board. I plan to continue to participate in service activities and making amends (directly and indirectly), and believe my skills and background in healthcare and finance would be beneficial to many. It's my hope that this letter has provided some inkling regarding my true character and that my behavior and corresponding criminal charge are not indicative of the person who I am. I would also like to thank you, Judge Trenga, for allowing me to visit my relatives in Puerto Rico and informing them of the circumstances surrounding my criminal and civil charges. I can't stress how important it was for me to tell them face-to-face, as the feedback I received will be helpful during conversations I plan to have in the next several weeks with other family members.

Again, I would like to express my profound remorse and it's my honest desire to make amends and hopefully, rebuild my life and legacy.

Sincerely,

*Donald L Johnson*
Donald L. Johnson