IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | CRIMINAL NO. 1:11CR00254-001 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD JOHNSON | ) | |
| | ) | |
| Defendant | ) | |

**UNITED STATES' SUPPLEMENTAL BRIEF
REGARDING FORFEITURE OF IRA FUNDS**

The United States submits this supplemental brief on the below enumerated issues pursuant to the Court's Order of March 5, 2014:

(1) The applicability of the Fourth Circuit's opinion in *United States v. Smith*, 47 F. 3d 681 (4th Cir. 1995), to this case.

The *Smith* case does not govern the issue in this case for two reasons. First, *Smith* held that the defendant could not be required to turn over his ERISA covered pension benefits "upon receipt each month" to pay restitution. 47 F.3d at 682. Here, however, the government does not seek to forfeit regular payments from an ERISA plan upon Johnson's receipt of them. Rather, the government seeks funds that Johnson himself admits have been in his IRA since January 2010 or earlier, and that have been commingled with at least $60,000 of non-ERISA funds. This case is thus analogous to *Tenneco, Inc.v. First Virginia Bank*, 698 F.2d 688 (4th Cir. 1983). In *Tenneco*, a debtor sought to protect from garnishment funds that he had previously withdrawn from his ERISA plan and put in the custody of his broker. *Id*. at 690. The Fourth Circuit rejected the

1

defendant's "claim[] that any funds or securities whose origin may be traced to a pre-retirement draw from an ERISA approved plan are forever immune from attachment by creditors," concluding that "[n]o provision of ERISA supports [the debor's] claim." *Id*. at 690-91. Johnson attempts to put forth essentially the same argument here, and *Tenneco* requires that it be rejected.

Second, *Smith* was superseded by statute when the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A-3664 was enacted. *See United States. v. Miller*, 588 F.Supp. 2d 789, 794-95 (W.D. Mich. 2008) (noting that *Smith* was overruled with the enactment of the MVRA in 1996); *United States v. James*, 312 F.Supp. 2d 802, 805 (E.D. Va. 2004) ("Congress in passing the Mandatory Victim Restitution Act of 1996 [Pub.L. No. 104-132] ("MVRA") has created just such an exception [to § 1056(d) of ERISA]."). Even before the *Smith* court's view of the anti-alienation provision in ERISA, 29 U.S.C. § 1056(d)(1), was superseded by statute for restitution purposes, it was clearly the minority view at the time, as noted by the First Circuit in *Hoult v. Hoult*, 373 F.3d 47, 54 (1st Cir. 2004):

> Four of the five courts of appeals to consider the question have construed § 1056(d)(1) as applying to benefits only while held by the plan administrator and not after they reach the hands of the beneficiary. *Wright v. Riveland,* 219 F.3d 905, 919–21 (9th Cir.2000); *Robbins v. DeBuono,* 218 F.3d 197, 203 (2d Cir.2000); *Guidry v. Sheet Metal Workers Nat'l Pension Fund,* 39 F.3d 1078, 1081–83 (10th Cir.1994) (en banc); *Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville,* 16 F.3d 52, 54–56 (3d Cir.1994). . . .
>
> The plain language of § 1056(d)(1) is that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." That language governs only the plan itself. Standing alone, it "does not read comfortably as a prohibition against creditors reaching pension benefits once they have left the hands of the administrator." *Robbins,* 218 F.3d at 203. If Congress had intended § 1056(d)(1) to reach that far, it could easily have employed the type of language found, for example, in the Veterans Benefits Act, 38 U.S.C. § 5301(a), which prohibits attachment of benefits "either before or after receipt by the beneficiary."

2

That Congress chose not to do so is significant.

The *Hoult* court went on to reject the holding of *Smith*—which, as noted above, does not apply to the instant case—and adopt the majority view. *Hoult* explained: "Nothing in ERISA or in the regulations supports a distinction in the anti-alienation provision between pre-retirement lump sum payments and post-retirement annuity payments." *Id*. at 55.

> (2) The extent to which Defendant's ERISA funds that were rolled over into his IRA retained their ERISA protections.

Once the ERISA funds are deposited into a beneficiary's IRA, and thus, are out of the hands of the pension plan administrator, they lose ERISA protection. *United States v. Weiss*, 345 F.3d 49, 57-58 (2d Cir. 2003); *United States v. Vondette*, 352 F.3d 772, 775 (2d Cir. 2003), *judgment vacated and case remanded for consideration of United States v. Booker*, 543 U.S. 220 (2005). As the *Vondette* court noted, "were we to protect IRAs from forfeiture, we would effectively be offering retirement benefits to criminals who were savvy enough to establish such accounts before they were captured. This would be an untenable result." *Id. See also In Re Larson*, 340 B.R. 852, 859 (N.D. Ohio 2006) (benefits are protected only so long as they are within the fiduciary responsibility of private plan managers). *See also DaimlerChrysler Corp. v. Cox*, 447 F.3d 967, 974 (6th Cir. 2006) (opining that "once a pension plan has sent benefit payments to a beneficiary and relinquished control of those payments, the attachment of those funds by a creditor does not constitute an alienation."). The Forbes article the defendant cites for the proposition that ERISA funds maintain their protection when rolled into an IRA does not have the force of law. *See* Dkt. #36 at 2-3.

The Fourth Circuit has held that under federal law, funds in an IRA may be forfeited in their entirety, notwithstanding state law to the contrary. *United States v. Bollin*, 264 F.3d 391, 423 (4th Cir. 2001). *See also Grund v. Delaware Charter Guarantee & Trust Co.,* 788 F.Supp.2d 226, 236 (S.D.N.Y. 2011) ("Courts have repeatedly held that ERISA does not apply to IRAs."), *reconsideration granted in part, denied in part*, 2011 WL 3837146 (S.D.N.Y. Aug. 30, 2011); *Charles Schwab & Co. v. Debickero*, 593 F.3d 916, 919 (9th Cir. 2010) ("IRAs are specifically excluded from ERISA's coverage" because they involve "no employer oversight, no ongoing employer commitment, nor any potential for employer abuse"); *United States v. Norton,* 2002 WL 31039138, *3-4 (W.D. Va. 2002) (the anti-alienation provision in ERISA protects pension plans from forfeiture, but not IRAs).

    (3) The legal effect, if any, of Defendant's commingling of ERISA and non-ERISA funds in his IRA with respect to the second issue listed above.

The defendant acknowledges that he has contributed at least $60,000 of non-ERISA funds to the USAA IRA account. *See* Def. Supp. Memo, Dkt. #33 at 2. It is difficult to now divide the non-ERISA funds from the ERISA derived funds since all the funds have been used as investment vehicles that have earned a return. The legal effect of the commingling allows the United States to invoke the substitute asset provision of 21 U.S.C. § 853(p)(1)(E) which authorizes the forfeiture of substitute assets when the criminal proceeds have been "commingled with other property which cannot be divided without difficulty." *See United States v. Alamoudi,* 452 F.3d 310, 316 (4th Cir. 2006) (finding agent's affidavit satisfied 853(p) requirements); *United States v. Salvagno*, 2006 WL 2546477 *10 (N.D.N.Y. 2006) (construing the RICO substitute asset provision in 18 U.S.C. § 1963(m) which mirrors the substitute asset provision in 21 U.S.C. § 853(p)).

In *Salvagno*, ERISA and non-ERISA funds were commingled in the defendant's IRA account. *See Id*. at *5. The court noted the difficulty in trying to determine the rate of earnings of the various funds that were deposited into the IRA and that making that determination would "require an actuary with more than a slide rule and lots of time on his hands" and that the substitute asset provision was "precisely intended to insulate the courts from serving as either an actuary or accountant or to labor with a calculator in hand on these types of matters." *Id*. at 13. The *Salvagno* court also observed that "[e]ven Individual Retirement Accounts (IRA) sought by the Government as substituted assets are not shielded by ERISA from criminal forfeiture," citing *Vondette*. *Id*. at *11.

Finally, the United States notes that in paragraph 12 of the defendant's plea agreement, he agreed to forfeit substitute property as well as the proceeds of his offense, and in paragraph 13 he agreed to "waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement." Dkt. #5. The Court should not allow the defendant, who obtained the benefits of a plea agreement, to now contest one of the provisions in that agreement where he consented to the forfeiture. *See United States v. Koch*, 491 F. 3d 929, 931 (8th Cir. 2007) (defendant expressly waived his right to challenge forfeiture in his plea agreement, and the court finds the defendant in breach of his plea agreement by contesting the forfeiture); *United States v. Masilotti*, ___ F. Supp. 2d ___, 2013 WL 4714216, * 2 (S.D. Fla. Aug 7, 2013) ("A party cannot accept the benefits of an agreement, in whole or in part, and then renege by contesting the forfeiture which was part of the bargain."; defendant's waiver bars him of all defenses to forfeiture or relief thereof).

(4) Defendant's reasons for rolling funds from the ERISA-qualified accounts into the IRA, including specifically whether Defendant was required to transfer funds out of his ERISA-qualified account.

The United States is not privy to the reasons why the defendant rolled over his ERISA-qualified accounts into his IRA. Nevertheless, they are now out of the hands of the ERISA plan administrator, and thus, are subject to forfeiture.

Respectfully submitted,

Dana J. Boente
Acting United States Attorney

By: _____/s/_____
Karen Ledbetter Taylor
Assistant United States Attorney
Attorney for the United States of America
United States Attorney's Office
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703/299-3700
Fax: 703/299-3982
Email Address: Karen.Taylor2@usdoj.gov


Jeffrey H. Knox
Chief
Criminal Division, Fraud Section
United States Department of Justice


\_\_\_\_\_/s/ Justin Goodyear_____
Justin Goodyear
Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of March, 2014, the foregoing was served electronically through ECF on the following counsel for Donald Johnson:

Jonathan A. Simms, Esq.
Simms & Harris, PLLC
11350 Random Hills Road
Suite 800
Fairfax, Virginia 22030
(703) 934-6015
(703) 995-0850 Fax
www.simmsharris.com

/s/
_____
Karen Ledbetter Taylor
Assistant United States Attorney
Attorney for the United States
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office Number: (703)299-3700
Facsimile Number: (703)299-3982
E-mail Address: karen.taylor2@usdoj.gov