UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case Number 1:11-cr-254 (AJT) |
| | ) | |
| DONALD JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

This matter is before the Court on the United States of America's Renewed Motion for an Order of Forfeiture as to Certain Substitute Assets [Doc. No. 28] ("the Motion"). The Court has considered the Motion, the briefs submitted in support thereof and in opposition thereto, and the arguments of counsel at the hearing held on February 21, 2014. For the reasons stated below, the Court concludes based on the holding and reasoning of *United States v. Smith*, 47 F.3d 681 (4th Cir. 1995), that the Motion must be GRANTED only as to funds in the defendant's IRA account that do not trace to a qualified ERISA plan and otherwise DENIED.

At his sentencing held on August 12, 2011, the defendant agreed to, and the Court entered, a Preliminary Consent Order of Forfeiture providing that the United States was entitled to a money judgment in the amount of $755,066.20 [Doc. No. 19]. In order to satisfy that judgment, the Government seeks forfeiture of funds currently on deposit in the defendant's IRA account. The defendant opposes the Government's motion on the ground that the funds in his IRA account, which were rolled over from an ERISA-qualified retirement account upon his retirement, are protected from forfeiture by ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1) ("Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.").

An individual cannot be compelled to forfeit his right to undistributed benefits under an ERISA-qualified plan. *See Guidry v. Sheet Metal Workers Nat'l Pension Fund,*

1

493 U.S. 365 (1990) (holding that constructive trust on plaintiff's pension benefits, imposed to satisfy a judgment against him, violated ERISA's anti-alienation provision). The Government contends, however, that the defendant's IRA funds are subject to forfeiture because they are no longer in an ERISA-qualified plan. While some courts have adopted the view that ERISA funds are subject to forfeiture once distributed, *see, e.g., United States v. Weiss*, 345 F.3d 49, 57 (2d Cir. 2003), the Fourth Circuit in *United States v. Smith* reached a different conclusion, holding that a restitution order requiring the defendant to turn over his monthly pension as it was paid violated ERISA's anti-alienation provision. In *Smith*, the court explained:

> We believe there is a distinction between funds disbursed from an ERISA plan before an employee has retired and such funds paid as an annuity for retirement purposes. The Supreme Court has noted that the purpose of ERISA is to safeguard a stream of income for pensioners. *Guidry*, 493 U.S. at 376, 110 S. Ct. at 687. Where an employee elects to draw on her ERISA plan prior to her retirement, she forfeits the protection provided by the Act. Where, however, the funds are paid pursuant to the terms of the plan as income during retirement years, ERISA prohibits their alienation.

*Id.* at 683. Here, the defendant's ERISA funds were paid to him upon his retirement, and under the reasoning and holding of *Smith* those funds are not subject to forfeiture once in his hands.

The facts of this case are distinguishable from those in *Smith* in that the funds the Government seeks to have forfeited are no longer in a qualified ERISA plan, but rather were rolled over directly into an IRA, which does not enjoy the protections afforded an ERISA plan. However, the bulk of the funds currently in the IRA are indisputably traceable to distributions from an ERISA-qualified plan, and the defendant has not taken any distributions from the IRA.[1] The issue, then, is whether the Government can compel

---

[1] The Government does not contend that any of the ERISA funds deposited into the IRA trace to the proceeds of the defendant's criminal activities. With respect to the unprotected funds that were deposited into the IRA, the defendant has made inconsistent statements concerning the total amount deposited, stating variously that he deposited a

2

the defendant to forfeit the funds attributable to his ERISA plan even though, had the defendant not yet rolled the funds over into his IRA, the Government could not compel him to turn over those funds as he received them. Under the reasoning adopted in *Smith*, the Court finds no material difference to justify a different result.

The Government contends that *Smith* is no longer good law, having been superseded by the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A-3664. Courts, including in this District, have concluded that, in passing the MVRA, Congress removed restitution orders from the ambit of ERISA's anti-alienation provision. *See, e.g., United States v. James*, 312 F. Supp. 2d 802, 805 (E.D. Va. 2004). But this case involves forfeiture, not restitution, and for that reason the MVRA does not, by its terms, apply. Further, while *Smith* itself involved restitution, its reasoning is clearly applicable to forfeiture as well. Thus, in the absence of a statute comparable to the MVRA but applicable to forfeiture, the Court must conclude that *Smith* continues to apply to forfeiture.

The Government also seems to argue that, notwithstanding any immunity from forfeiture the IRA funds may otherwise have had, they have lost their protection from forfeiture because Johnson chose to comingle them with certain concededly unprotected funds that are not traceable to his qualified ERISA plan. In making this argument, the Government contends that it is difficult, if not impossible, to determine the amount that is traceable, after investment returns, to the unprotected funds as opposed to the funds rolled over from the qualified ERISA plan. The Court rejects this position. While there

---

total of $60,000 of such funds and also, as reflected in certain statements produced to the Court, that he deposited $500 a month over a twelve-month period, which would result in a total of only $6,000. The Court will hold additional hearings, if necessary, to determine the amount of unprotected funds deposited into the IRA, should the parties be unable to resolve that factual issue.

3

is no dispute that the Government is entitled to any non-ERISA funds that were deposited into the IRA, as well as the investment returns that are attributable to those funds, the corpus of the transferred ERISA funds is identifiable, as are the amounts and dates of deposit for the unprotected funds. For these reasons, it would not appear difficult to determine, or estimate with reasonable accuracy, the returns attributable to the unprotected funds.[2]

Finally, the Government notes that, in his plea agreement, the defendant agreed to forfeit "substitute property" and to waive all constitutional and statutory challenges to any forfeiture carried out in accordance with that agreement. He is bound by his agreement, the Government contends, and for that reason should not be heard with respect to any objections to the forfeiture of the funds in the IRA, even those that may otherwise be protected from forfeiture. The Court must reject this position as well. ERISA's anti-alienation provision applies to both voluntary and involuntary transfers. *See, e.g., General Motors Corp. v. Buha*, 623 F.2d 455, 460 (6th Cir. 1980). Further, the parties' plea agreement is to be construed in accordance with traditional principles of contract law. *See United States v. Yooho Weon*, 722 F.3d 583, 588 (4th Cir. 2013). To the extent the defendant's plea agreement authorizes forfeiture of funds distributed from his ERISA plan, it constitutes an unenforceable agreement to alienate or assign those funds. *See generally Guidry*, 493 U.S. 365. The defendant's purported waiver of his right to challenge any forfeiture does not make it any less so.[3]

Accordingly, it is hereby

---

[2] The Court need not address *Smith*'s applicability to a situation in which ERISA-derived funds have been comingled with non-ERISA-derived funds in such a way that it is not possible to identify them.

[3] For this reason, the Court need not determine either (1) whether the plea agreement's reference to "substitute property" is meant to extend to funds that are generally protected from forfeiture, or (2) whether the terms of the plea agreement would constitute a sufficiently explicit waiver of ERISA's anti-alienation provision if such a provision could be waived under the circumstances of this case

4

ORDERED that the United States of America's Renewed Motion for an Order of Forfeiture as to Certain Substitute Assets [Doc. No. 28] be, and the same hereby is, DENIED in part and GRANTED in part. The Motion is DENIED with respect to those funds transferred into the IRA that can be traced to Defendant's qualified ERISA plan (the "Protected Funds"); and it is GRANTED as to the any funds deposited into the IRA from sources other than a qualified ERISA plan, together with the investment returns thereof (the "Unprotected Funds"); and it is further

ORDERED that Defendant shall cause to be withdrawn and delivered to the "United States Marshals Service" a bank check for the amount of Unprotected Funds payable under this Order. To the extent the parties, after conferring, dispute the relative amounts of the Unprotected and Protected Funds, they shall submit to the Court, within fourteen (14) days of the date of this Order, memoranda in support of their respective positions; and it is further

ORDERED that Defendant be, and hereby is, ENJOINED and RESTRAINED from removing, assigning, pledging, spending, transferring, dissipating or otherwise removing or alienating the Protected Funds, pending further Order of this Court, upon defendant's application following the expiration of any period within which the Government may appeal this Order, and any proceedings on appeal.

The Clerk is directed to forward copies of this Order to all counsel of record.

/s/
Anthony J. Trenga
United States District Judge

Alexandria, Virginia
April 1, 2014